UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESEAN STRATFORD,

        Plaintiff,

                                              CASE NO. 12-CV-13013
v.                                       HONORABLE GEORGE CARAM STEEH

MATTHEW MERLO, ANTONIO
GOLIA, and THOMAS KONAL,

        Defendants.
_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 16)**

Plaintiff Desean Stratford brought this 42 U.S.C. § 1983 suit against three Eastpointe police officers arising out of his arrest on April 15, 2011 for felonious assault. Stratford alleges that the officers falsely arrested him and used excessive force in violation of his Fourth Amendment rights. He also alleges several supplemental state law claims. Now before the court is defendants' motion for summary judgment on the grounds that probable cause existed for the arrest and defendants are entitled to qualified immunity. Oral argument was heard on July 23, 2013. For the reasons set forth below, defendants' motion (Doc. 16) shall be granted.

**BACKGROUND**

On April 15, 2011, Stratford went to an apartment building in the Ten Mile and Gratiot area of Eastpointe to do some dry wall repairs on his girlfriend's daughter's, Tiana Kenner's, apartment. While there, Kenner's boyfriend, Arsha Dotstry, was repairing an

-1-

automobile in the parking lot that belonged to Mattie Parks. The parties dispute what happened between Stratford and Dotstry, but the record is clear that someone called in a felonious assault charge in the Ten Mile and Gratiot area to the Eastpointe police.

Three Eastpointe police officers, Matthew Merlo, Antonio Golia, and Thomas Konal, responded to the dispatch reporting a felonious assault. The officers stopped Stratford on the street and questioned him about the incident. Stratford was wearing a tan coat. The interview was videotaped and audio recorded by a camera and microphone in Golia's vehicle. The tape shows Stratford accusing his "girlfriend's daughter's boyfriend," later identified as Arsha Dotstry, of starting an altercation and chasing him with a baseball bat. On that tape, Sratford can be heard to complain that he injured his ankle during the pursuit and that he telephoned the police. An officer can also be heard on the tape asking Stratford if he was hit with a baseball bat. The video then shows Stratford entering the back of a police vehicle without being handcuffed.

Next, the video shows several police cruisers drive a short distance to the location of an apartment building where the incident allegedly occurred. The police found Dotstry in the process of repairing an automobile. The officers questioned Dotstry and that interview is depicted on the police video tape. The video tape shows Dotstry telling the police unequivocally that "they jumped on me, I'm the one that got jumped on" and that "he hit me in the face with a jack pole." According to Officer Merlo, Dotstry told him that he put his arm in front of his face to protect himself when Stratford swung the jack pole at him. Photographs of Dotstry show that he had a large bump in the center of his forehead and cuts on his right hand. Independent witness, Mattie Parks, told police that Dotstry got into a verbal altercation with a man wearing tan colored clothing, and that the next thing she

saw was the man running off holding a jack bar while Dotstry had been hit. After questioning Dotstry, they put him in a squad car. After the police questioned Dotstry and Parks, an officer opened the door of the police vehicle where Stratford was seated and handcuffed him. At his deposition, Stratford testified that when the officer opened the door of the police vehicle, he placed his foot outside the car, and then the officer who placed the handcuffs on him allegedly, without any provocation, bent over, twisted his ankle, and broke it. At his deposition, Stratford admitted that he never cried out in any pain when the officer allegedly broke his ankle. During his intake at the Eastpointe Police Department, Stratford was asked about any injuries that he had and he stated only that he had a scrape on his right elbow. Stratford signed the "Inmate Observation Report" which identified the scrape as his only alleged injury.

In support of their motion for summary judgment, defendants rely primarily on the police video as well as affidavits of the officers. The affidavits state that the officers responded to a report of a felonious assault, questioned Stratford, Dotstry and Parks about the incident, and at no point during their interactions with Stratford, did they turn or twist his ankle. According to Officer Merlo's affidavit, he was the arresting officer. In response, Stratford relies solely on his own deposition and that of Dotstry where both testified that there was no altercation between the two of them, and that Dotstry allegedly hit himself in the head with a wrench. In his Complaint, Stratford alleges that he witnessed an altercation outside of the apartment where he was working on the date in question, but at his deposition he denied that any altercation took place at all between any parties. The charge against Stratford for felonious assault was dropped when Dotstry failed to appear and prosecute.

**STANDARD FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

I.  Section 1983 Claims

    A.  Qualified Immunity

Defendant officers allege that they are entitled to summary judgment on the basis of qualified immunity. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original). Hence, immunity questions should be resolved as early in the litigation as possible. Pearson v. Callahan, 555 U.S. 223, 232 (2009). Qualified immunity gives "ample room for mistaken judgments by protecting all but the plainly incompetent, and those who knowingly violate the law." Hunter v. Bryant, 502

U.S. 224, 229 (1991) (citations omitted). "A successful § 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights . . . such that mere negligence or recklessness is insufficient." Ahlers v. Schebile, 188 F.3d 365, 373 (6th Cir. 1999). Once the defense of qualified immunity is raised, the plaintiff bears the burden of proving that the defendant is not entitled to qualified immunity. Chappell v. City of Cleveland, 585 F.3d 901, 907 (6th Cir. 2009). "The relevant, dispositive inquiry in determining whether a right was clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Klein v. Long, 275 F.3d 544, 550 (6th Cir. 2001) (quotation omitted).

In resolving the issue of qualified immunity on summary judgment, courts are required to engage in a two-step decisional process: (1) whether the plaintiff has shown sufficient facts to make out a violation of a constitutional right; and (2) whether the constitutional right was "clearly established" at the time of the alleged misconduct. Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). A district court enjoys "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236. The court now considers Stratford's false arrest claim in light of the above directions.

B. False Arrest under § 1983

Stratford contends that defendants falsely arrested him in violation of the Fourth Amendment. The Fourth Amendment guarantees citizens protection against "unreasonable searches and seizures." In order for an arrest to be reasonable within the meaning of the Fourth Amendment, it must be based on probable cause. Graham v.

Connor, 490 U.S. 386, 396 (1989). Probable cause in the context of an arrest is defined as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing or is about to commit an offense." Hinchman v. Moore, 312 F.3d 198, 204 (6th Cir. 2002) (citing Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988)). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). The existence of probable cause should be determined on the totality of the circumstances, including a "realistic assessment of the situation from a law enforcement officer's perspective." United States v. Ferguson, 8 F.3d 385, 392 (6th Cir. 1993), cert. denied. 513 U.S. 828 (1994); Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995). A valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent. Criss, 867 F.2d at 262. The inquiry "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck, 543 U.S. at 152. "[A]fter the officer determines, on the basis of the facts and circumstances known to him, that probable cause exists, the officer has no further duty to investigate or to search for exculpatory evidence." Logsdon v. Hains, 492 F.3d 334, 341 (6th Cir. 2007).

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance on state law." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). In this case, defendants arrested Stratford for felonious assault. In Michigan, "a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less

then murder" is guilty of the crime of felonious assault. MCL § 750.82. In this case, the officers had probable cause to arrest Stratford based on the victim Dotstry's statement that Stratford had struck him with a jack pole, combined with the fact that the victim was sporting a large bump in the middle of his forehead and scratches on his right hand. The officers' decision to arrest Stratford was also reasonable in light of the statement of an independent witness, Parks, that Dotstry had an altercation with a guy in tan clothing and that the man was seen running off with the jack bar in hand and that Dotstry had been hit. Both Dotstry's statements and Park's statements were recorded by the police video and establish conclusively that the officers had probable cause to arrest Stratford.

Stratford argues that the police lacked probable cause to arrest him. In support of this claim, he relies solely on his deposition testimony given on February 12, 2013, and the deposition testimony of Dotstry given on March 18, 2013, in which both deny that they had an altercation and claim that Dotstry's injuries were self-inflicted. This self-serving testimony given nearly two years after the incident is of no relevance in determining whether the officers had probable cause to believe that a crime had been committed at the time of the arrest. Based on the video tape which shows the victim unequivocally accusing Stratford of attacking him with a jack pole, and the testimony of an independent witness that Stratford was seen fleeing the area with a jack pole in tow, the officers had probable cause to arrest Stratford.

Having found that the officers had probable cause to arrest Stratford, Stratford cannot show any constitutional deprivation and thus has no claim under § 1983 for false arrest. Id. Because there is no constitutional violation, Stratford's § 1983 claim fails as a matter of law, defendants are entitled to summary judgment as to the false arrest claim,

and do not need qualified immunity. Marvin v. City of Taylor, 509 F.3d 234, 244 (6th Cir. 2007).

    C.    Excessive Force

Stratford argues that one of the officers, he is not sure which one, allegedly twisted his ankle when handcuffing him in alleged violation of his Fourth Amendment rights. This is his sole excessive force claim. The officers have all submitted affidavits and so it is now clear to the court that the officer who arrested Stratford is Officer Merlo. Accordingly, Stratford has no excessive force claim against Officers Golia and Konal.

The Fourth Amendment prohibits the use of excessive force by arresting and investigating officers. Bletz v. Gribble, 641 F.3d 743, 756 (6th Cir. 2011). In determining whether the force used was reasonable, courts must evaluate the situation based on "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The standard is an "objective" one, based on "the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. In making a reasonableness determination, the court must give "deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. " Burchett v. Kiefer, 310 F.3d 937, 944 (6th Cir. 2002). Determining whether the force used to affect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interest at stake. United States v. Place, 462 U.S. 696, 703 (1983). With respect to a claim of excessive force, the court is to consider three factors: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat of injury to the

officer or others, (3) whether he actively resisted arrest or attempted to evade arrest by flight. Smoak v. Hall, 460 F.3d 768, 783 (6th Cir. 2006).

In support of their motion for summary judgment as to the excessive force claim, defendants rely upon the Supreme Court's decision in Scott v. Harris, 550 U.S. 372 (2007). In that case, the Court held that a § 1983 claimant's testimony could be disregarded in deciding defendant officer's motion for summary judgment where the claimant's testimony was utterly refuted by the police video of the high speed chase in dispute. Id. at 380-81. In Scott, the Supreme Court held the district court erred in considering a § 1983 claimant's testimony that his driving did not endanger any innocent bystander motorists and thus, the officer's actions in ramming into his vehicle to end the high-speed chase was an unreasonable use of force, where that testimony was utterly contradicted by the police video showing the claimant's outrageous driving during the high speed chase where he crossed the yellow line, traveled at excessive speeds, and even hit another officer's squad car while making evasive maneuvers. In Scott, the claimant's testimony was clearly fictionalized. The Court explained, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. at 380. In Scott, the Supreme Court rejected the argument that the question of objective reasonableness is a question for the jury, explaining that "[a]t the summary judgment stage. . . once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record. . . the reasonableness of [the defendant's] actions . . . is a pure question of law." Id. at 381 n.8.

Like Scott, Stratford's testimony now that there was no altercation between himself and Dotstry is clearly fictionalized and is debunked by the video evidence at the time of the incident where he, Dotstry, and Parks all stated to the contrary. In addition to this inconsistency, numerous other statements Stratford made at his deposition are explicitly contradicted by his statements on the video and audio tape of the incident. For example, on the tape Stratford can be heard saying he called the police, but at his deposition, he denied it. On the tape, Stratford can be heard to accuse Dotstry of chasing him with a baseball bat, but at his deposition, he denied it. On the tape, Stratford can be heard to accuse Dotstry of entering into a verbal altercation that escalated to a physical altercation, but at his deposition, he denied it. Having carefully considered the police video, the court finds that Stratford's deposition testimony is "so utterly discredited by the record that no reasonable jury could . . . believe [him.]" Scott, 550 U.S. at 380.

Moreover, Stratford's deposition testimony that an officer fractured his ankle during handcuffing is incredulous where he admittedly never complained in any way at the time, did not cry out in pain, did not report the injury at the time of his arrest or during the police intake, and where there are no corroborating witnesses or evidence of any kind to support his far fetched story. Stratford has submitted no medical evidence but relies solely on his recent deposition testimony which is wholly belied by the record.

Stratford's deposition testimony that an officer broke his ankle is also refuted by his statements during his intake at the Eastpointe Police Department, where his signature appears at the bottom of the "Inmate Observation Report" which identifies the "scrape" as his only injury. Stratford's answers to interrogatories also support the court's conclusion that Stratford has no excessive force claim. In his answers to interrogatories, Stratford left

blank the response to the question: "[i]n Count I of your Complaint, you allege a Fourth Amendment Deprivation-Excessive Force. In relation to this allegation, please provide the following information:" which proceeded to ask Stratford to identify the defendant(s) alleged to have used excessive force, the factual allegations supporting such a claim, the identity of witnesses, and the identity of injuries. Stratford did not respond to the interrogatory in any way.

Stratford argues that police may not use force against a "neutralized" defendant. In support of this argument, he relies on McDowell v. Rogers, 863 F.2d 1302 (6th Cir. 1988), where the Sixth Circuit found that an officer was not entitled to a directed verdict on an excessive force claim where the officer struck a handcuffed defendant, who was not trying to escape or hurt anyone, with a night club breaking his ribs. Id. at 1307. At trial, defendant's sister corroborated his story by testifying that when she visited him in prison, she observed his serious injuries. No such corroboration exists here. He also relies on Phelps v. Coy, 286 F.3d 295 (6th Cir. 2002), where the Sixth Circuit ruled that the officer was not entitled to qualified immunity on an excessive force claim where the officer pinned the handcuffed defendant to the ground, and although the defendant was making no effort to escape and posed no threat to anyone, the officer hit him in the face twice and slammed his head into the floor at least three times. Coy, 286 F.3d at 301-03. In Coy, taking the facts in the light most favorable to the plaintiff, the evidence established that the officer had struck the plaintiff repeatedly after he was handcuffed. By contrast, there is no similar evidence here that Stratford was beaten after he was subdued.

In sum, considering the facts in a light most favorable to Stratford, there is no possibility that a reasonable juror would accept Stratford's newly created version of events.

Stratford's incredulous claim that an officer gratuitously broke his ankle is not supported by any evidence in the record. His eleventh-hour statements at his deposition are contradicted by the statements captured on the video at the time he was stopped. It is well established that a "mere scintilla" of evidence is not sufficient to defeat a motion for summary judgment. Anderson, 477 U.S. at 252. Because there is no constitutional violation, Stratford's § 1983 excessive claim fails as a matter of law and defendants are entitled to summary judgment.

II.     Supplemental State Law Claims

    A.     Gross Negligence

In their motion for summary judgment, defendants argue that they are entitled to summary judgment as to Stratford's gross negligence claim. Stratford does not respond to the argument in his response brief, and apparently, concedes that the claim lacks merit. MCL § 691.1407(2) immunizes governmental employees from liability while engaged in the exercise of a governmental function, except for conduct which amounts to "gross negligence" that is the "proximate cause" of plaintiff's injury. Because the officers had probable cause to arrest Stratford, there is no gross negligence claim arising out of his arrest. As to Stratford's excessive force claim against Officer Merlo, such a cause of action involves an intentional tort, and thus cannot form the factual basis for a "gross negligence" claim. VanVorous v. Burmeister, 262 Mich. App. 467, 483-84 (2004); Sudul v. City of Hamtramck, 221 Mich. App. 455, 458 (1997). Accordingly, defendants are entitled to summary judgment as to Stratford's gross negligence claim.

B. False Arrest and False Imprisonment

Under Michigan law, in order to prove false arrest or false imprisonment, the plaintiff must prove, (1) an arrest of a person, (2) who is innocent of the charge on which he is arrested, (3) by the defendant or at the defendant's direction, (4) without legal justification or probable cause. Lewis v. Farmer Jack, 415 Mich. 212, 232 (1982). An arrest is legal if it is based on probable cause. Brewer v. Paren, 132 Mich. App. 520, 527 (1984). Just as in a false arrest claim, a false imprisonment claim requires proof that the imprisonment was taken in the absence of probable cause. Peterson Novelties, Inc. v. City of Berkely, 259 Mich. App. 1, 18 (2003). In Michigan, probable cause is present where a "fair-minded person of average intelligence and judgment" would have been justified, based on the then existing facts available to the police officer, in believing that the suspect was guilty of a crime. People v. Goeckerman, 126 Mich. App. 517, 521 (1983). For the reasons discussed above, defendant officers had probable cause to arrest Stratford. Accordingly, defendants are entitled to summary judgment as to his false arrest and false imprisonment claims.

C. Intentional Infliction of Emotional Distress

To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must prove evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) severe emotional distress. Walsh v. Taylor, 263 Mich. App. 618, 634 (2004). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" Lewis v. LeGrow, 258 Mich. App.

-14-

175, 196 (2003). Even taking Stratford's allegation that an officer fractured his ankle while handcuffing him as true, he cannot show that such conduct would meet the exacting standard that the conduct be "atrocious and utterly intolerable in a civilized community." Accordingly, defendants are entitled to summary judgment as to the intentional infliction of emotional distress claim.

### D. Assault and Battery

Under Michigan law, an individual may bring an assault and battery claim against officers who 'use [ ] more force than reasonably necessary in effecting an arrest." White v. City of Vassar, 157 Mich. App. 282, 293 (1987) (per curiam), and "actions which would normally constitute intentional torts are protected by governmental immunity" only if "those actions are justified." Brewer v. Perrin, 132 Mich. App. 520, 528 (1984). Because Officer Merlo is the only officer accused of using excessive force during an arrest, Officers Golia and Konal are entitled to summary judgment on the assault and battery claim. For the reasons discussed earlier in this opinion granting Officer Merlo summary judgment on the excessive force claim, the court also grants his motion for summary judgment on the assault and battery count.

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (Doc. 16) hereby is GRANTED.

**IT IS SO ORDERED**.

Dated: July 29, 2013

                                             s/George Caram Steeh
                                             GEORGE CARAM STEEH
                                             UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 29, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk